MILO THOMAS, 1ST, Plaintiff *v.* ALLIED BROADCASTING COMPANY, INC., Defendant.

Supreme Court, Special Term, Monroe County, April 30, 1946.

*Milo Thomas, 1st,* plaintiff in person.

*MacFarlane, Harris & Goldman* for defendant.

CRIBB, J. Defendant is engaged in furnishing music, commonly referred to as " Canned Music ", from records by wire to its subscribers. Plaintiff operates a restaurant at 44½ East Avenue in the city of Rochester. On December 7, 1945, the parties entered into a written agreement whereby defendant agreed to furnish " Music by Muzak " to plaintiff for which he was to pay $40 per month for the first twelve months, and $50 per month thereafter. Paragraphs one and three of the contract read as follows: " 1. Allied will supply to subscriber ' Music by Muzak ' program service, only to the following location: Subscribers premises at 44½ East Avenue, Rochester, N. Y. between the hours of 10 A.M. and 2 A.M." " 3. Subscriber will

accept the ' Music by Muzak ' programs at such periods of time as may be fixed by Allied and as such programs may from time to time be constituted.'' It appears that Muzak hires union musicians to make recordings and furnishes such records to defendant for its use in selling canned music by wire to its subscribers.

On the date of the execution of the contract plaintiff was employing a pianist under a written contract dated October 18, 1945, and expiring January 20, 1946, with a renewal option to plaintiff. At the time of this hiring plaintiff was operating a restaurant on Cortland Street but was compelled to move to 44½ East Avenue which latter location afforded much smaller floor space, but being obligated to keep the pianist until January 20th plaintiff erected a dais six by seven feet in a corner of the new quarters upon which a piano was placed and the pianist gave programs there from 9:30 P.M. to 2:00 A.M. It is undisputed that this pianist, desiring to accept a position out of the city of Rochester, asked to be relieved from the employment of the plaintiff after January 20th, the expiration date of their contract; that the plaintiff therefor consented not to exercise his option to continue the contract, and, having wired music available under his contract with defendant, removed the dais and placed a table and chairs in its place.

It is not disputed that after the execution of the contract by plaintiff and defendant the latter furnished music to plaintiff until December 29th when it discontinued the service; that Maxwell, president of defendant corporation, advised plaintiff that the service was discontinued because the Rochester Musicians Association, Local No. 66, A. F. of M., hereinafter referred to as the '' Union '', was trying to force defendant to hire a union musician in its studio at a salary of $50 per week, although defendant had no use for such a musician, and that when defendant refused to hire such a musician the president of the union advised Maxwell that defendant would have to discontinue service to all of its subscribers who were not employing a live musician member of the union, and that unless defendant agreed to this a protest would be filed with Mr. Petrillo, national head of the Musicians Association of America, who would then take steps to prevent union musicians from making recordings for Muzak, which would put Muzak out of business and deprive defendant of its source for getting records. In his affidavit plaintiff states that Maxwell told him that the union was '' holding him up.'' It further appears from the affidavits that defendant furnished no music to plaintiff from December

29th to January 16th during which period defendant was negotiating with the union as a result of which it made a contract with it dated that day, and which among other things provided that the defendant would hire a musician, member of the union, as music director at $50 per month.

Plaintiff states that from January 16th to January 24th defendant again furnished music according to its contract, and that on the 24th it discontinued service at 9:00 P.M. and notified plaintiff that, although it was physically and mechanically possible for it to do so, it would no longer furnish music after 9:00 P.M., giving as its reason that it was forced to withhold service after 9:00 P.M. each day by Campbell, president of the union, because of the contract made by defendant and the union on January 16th.

When the defendant finally refused service after 9:00 P.M. each day plaintiff brought this action against defendant for specific performance of its contract. By this motion he seeks an order directing the defendant to specifically perform its contract with him of December 7, 1945, pending the trial of the issues involved. This motion is brought on under a show cause order which also directed that pending determination of the motion the defendant furnish " Music by Muzak " to plaintiff between 10:00 A.M. and 2:00 A.M. of each day. Opposing the motion and contending that this temporary injunction should be vacated, the defendant relies upon section 876-a of the Civil Practice Act which denies jurisdiction to any court or judge to " issue any restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute " as defined in subdivision 10 of said section.

It is to be noted that all of these interruptions of, and changes in, the service, according to defendant's statements and admissions, were occasioned by demands of the union made upon it, and *after the execution* of the contract with the plaintiff.

While the defendant in its answer sets up an affirmative defense that it has the right under its contract with plaintiff to refuse service of music at any time between the hours of 10:00 A.M. and 2:00 A.M. because of the provisions of paragraph " 3 " of the contract as hereinbefore quoted, no such argument is presented or referred to in the answering affidavits submitted in opposition to this motion, and in its brief the defendant states that " this whole question turns upon the meaning of the term ' labor dispute '," as defined by statute. In determining this motion it is therefore unnecessary to attempt to construe or reconcile the provisions of paragraphs numbered " 1 " and

" **3** " of the contract. In passing, however, we suggest the absurdity of a contract which provides for the rendering of service daily during a stated period, and in a subsequent paragraph provides (if defendant's construction is to be accepted) that the party so obligated may furnish such service during only a part or none of the specified period.

Under this statement of facts is the plaintiff entitled to an order directing defendant to specifically perform under its contract pending trial of the issues, or must such relief be denied on the grounds that a " labor dispute " is involved within the purview of section 876-a of the Civil Practice Act?

After considering the arguments of counsel and examining the many cases cited in their briefs I am of the opinion that no " labor dispute " as contemplated by the statute is presented in this case. It seems clear that the union, which is not a party to this action, is trying to compel plaintiff to hire a live union musician whose services he does not require, and having no other means available, seeks to accomplish its purpose by inducing the defendant to breach its contract with plaintiff by refusing to furnish canned music between the hours of 9:30 P.M. and 2:00 A.M. Under the facts here presented this is an unlawful objective on the part of the union, and not one having some reasonable connection with wages, hours, health, safety, the right of collective bargaining or some other condition of employment. (See *Opera on Tour, Inc.*, v. *Weber*, 285 N. Y. 348; *Thompson* v. *Boekhout*, 273 N. Y. 390; *American Guild of Musical Artists* v. *Petrillo*, 286 N. Y. 226.)

Prior to the execution of their contract defendant and plaintiff had conversations with reference to the use of canned music at 44½ East Avenue to which location plaintiff was about to move his restaurant. Campbell, president of defendant corporation, states that he told plaintiff defendant was negotiating a contract with the local musicians' union, and that under such proposed contract defendant would not be permitted to furnish music to any establishment where such service would displace live musicians; and that plaintiff said he was undecided as to whether he would have a live musician. (It is to be remembered that this contract of the defendant with the union was not completed and executed until January 16, 1946 — some six weeks after the execution of the contract with the plaintiff.) The plaintiff states that in these conversations he told Maxwell that he was compelled by a contract to pay a pianist in his employ until January 20, 1946, and as he had to move to 44½ East Avenue, it would be necessary to continue with the pianist until

his contract expired; that he, the plaintiff, intended to use defendant's music in association with the pianist, and that if he decided on January 20th not to renew the contract with the musician, such action should not be considered as displacing the musician with wired music.

Following these conversations the plaintiff and defendant executed the written contract which contained no exceptions or limitations as to the matters covered by such conversations, and made no reference to them. The result was a simple contract whereby plaintiff subscribed for and defendant agreed to furnish wired music during the hours stated. Defendant inserted no provision in the contract to protect itself in the event that the musicians' union should forbid it to meet its contractual obligations thereunder. According to his own statements Campbell knew of the union's activities and purposes, yet he saw fit to make the contract with plaintiff without any conditions as to possible subsequent demands of the union. Plaintiff had advised him as to his contract with the pianist and the date of its termination.

Plaintiff's motion for an order directing specific performance of the contract pending trial of the issues is granted, with $10 costs to abide the event. Let order enter accordingly.