**MUNSON LINE, Inc., v. GREEN et al.**

District Court, S. D. New York.

Aug. 26, 1946.

Cahill, Gordon, Zachry & Reindel, of New York City (John T. Cahill, Paul W. Williams, and Peter W. Behr, all of New York City, of counsel), for plaintiff.

Baker, Obermeier & Rosner, of New York City (Oscar S. Rosner, Jay Raymond Levinson, and Sherman S. Lawrence, all of New York City, of counsel), for defendants.

CONGER, District Judge.

The defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. Rule 12 (b) (6), F.R.C.P., 28 U.S.C.A. following section 723c.

Three claims for relief arising out of the same facts and circumstances are alleged in the complaint. They are based upon (1) wrongful interference with the business of the plaintiff, (2) conspiracy in violation of Section 580, subsection 3 of the New York Penal Law, Consol. Laws, c. 40, and (3) malicious prosecution.

The plaintiff, a Maryland corporation, whose principal business at the present time is the investment in securities of other corporations, in February, 1939, acquired the assets of the bankrupt Munson Steamship

Line, which had operated a general steamship business.

The defendants, except Braunschweiger, had been holders of a substantial amount of Munson Steamship Line's 6% Gold Bonds, and pursuant to reorganization proceedings, they received a large amount of cash and a substantial amount of various classes of stock in the new company. Defendant, Louis A. Green, became a director in Munson Line and continued as such until April, 1940.

In June of 1939, one Harry O. King and members of his family purchased the holdings of the defendants in Munson Line, and after further acquisitions, King and his family had the largest single stock interest, and he was elected president. Through his recommendations, proposals to expand the shipping business were defeated by the stockholders, and instead the present policy of the company was initiated.

Pursuant to the adoption of this policy, the Munson Line made many investments including the acquisition of a large interest in Huyler's and a majority of the stock of Brockway Motor Company, Inc. The investment policy has proved to be highly profitable.

The complaint alleges that: Prior to September, 1940, the firm of Stryker & Brown, a brokerage house, had been acting for King in the purchase of Munson Line stock for his exclusive interest, but in September, 1940, in accordance with a conspiracy conceived in New York by Louis A. Green and joined in by the other defendants, the firm began buying this stock for its own benefit and registering it in the name of Hortense I. Braunschweiger, allegedly for the purpose of concealing its interest and harassing Munson Line or King into purchasing it at exorbitant prices;

That pursuant to this conspiracy the defendants instituted successive, groundless lawsuits in Maryland and in the District of Columbia, maliciously and without probable cause, circulated rumors maligning the integrity and ability of the management of Munson Line, and solicited other stockholders by misleading representations to join in suits against it, meanwhile continuing the purchase of Munson Line stock;

That the first suit was brought in the United States District Court in Maryland by the partners of Stryker & Brown, and sought damages for breach of an agreement entered into by King, acting on behalf of Munson Line and defendant Louis A. Green, acting as "duly authorized agent" of Stryker & Brown, in connection with the purchase of the stock of Brockway Motor Company;

That defendant Louis A. Green, who was in fact the dominant partner in Stryker & Brown at that time, was not a party plaintiff, but rather pretended to be merely an employee of the firm;

That while this first suit was still pending, an action was started in the same court, in which the Wall and Beaver Street Corporation, Strauss Brothers, a New York partnership, and Hortense I. Braunschweiger joined as parties plaintiffs;

That the defendants induced the Wall and Beaver Street Corporation and Strauss Brothers to join in the suit through misrepresentations concerning the affairs of Munson Line, used their nominee Braunschweiger, in order to conceal their own interest in the litigation and to complain of acts which they had approved and some of which had occurred prior to their acquisition of Munson Line stock;

That the amended complaint in that action contained allegations of fraud and mismanagement and prayed for the appointment of a receiver of Munson Line, and liquidation of its assets and distribution of the proceeds among the stockholders;

That while both Maryland suits were pending, an action was commenced in the United States District Court in the District of Columbia against Munson Line, and King and his wife by the same parties who instituted the second Maryland suit, and the complaint in that action was substantially identical with that of the second Maryland suit except that it asked for an accounting by King and his wife;

That all of the suits were terminated in favor of Munson Line.

Numerous other allegations are contained in the complaint including a charge that Louis A. Green violated his fiduciary duty by revealing confidential information to the other defendants while still a director of Munson Line; that the defendants caused to be made in the suits against Munson Line false, fraudulent and malicious allegations, inconsistent from one complaint to another, which, had the defendants' connection with the suits been known, would have appeared ludicrous upon their face because of defendants' participation in, and approval of, the very acts by Louis A. Green.

Many other improper acts and practices on the part of defendants are alleged in the complaint, but I believe a sufficient number have been stated here to present a picture of the situation as viewed by the plaintiff.

The alleged illegal acts and practices of defendants upon which plaintiff bases its cause of action under the first count of the complaint are generally set forth in Paragraph 30 of the complaint as follows:

"In furtherance of the aforesaid plan and conspiracy, defendants instituted successive groundless lawsuits, maliciously and without probable cause, asking for large sums of money by way of damages and threatening the liquidation and receivership of Munson Line and liquidation of Brockway Motor Company, Inc.; circulated rumors maligning the integrity and ability of the management of Munson Line; solicited other stockholders of Munson Line upon the basis of false representations to criticize its management and to bring suits against Munson Line; and wrongfully and maliciously engaged in improper practices in connection with the acquisition of stock in Munson Line."

■ I assume, as I must for the purposes of this motion, that the well pleaded facts are true.

■ A cursory reading of the complaint would undoubtedly give the impression that the suit is mainly one for malicious prosecution. However, the plaintiff's claim of wrongful interference with its business, although somewhat unique, nevertheless seems to be grounded in the law.

It contends that even though the malicious prosecution of the suits alone may not be actionable, taken together with the other acts showing an intentional series of wrongs, they constitute a wrongful interference with the business of another, and are actionable.

■ I have little doubt that the plaintiff's argument is valid and that it is entitled to relief if the allegations of the complaint are true. But a preliminary difficulty arises in attempting to ascertain which local law is applicable to the situation. As shown the alleged wrongful acts were numerous and occurred in at least four places, New York, Maryland, the District of Columbia and Connecticut and the various acts must be viewed as a component in order to visualize properly the plaintiff's theory. The fact that the conspiracy was conceived in New York is of doubtful assistance in resolving this difficulty, for it is a settled rule that allegations of conspiracy in a civil complaint add nothing to the force and effect of the acts done in carrying it out. Howland v. Corn, 2 Cir., 232 F. 35; Cohen v. Nathaniel Fisher, 135 App. Div. 238, 120 N.Y.S. 546. At best the allegations merely connect the parties to the overt acts.

However, the tort of wrongful interference with another's business in various forms seems to be generally recognized by the authorities.

In New York, where many of the alleged wrongful acts occurred, the cause of action finds precedent in those cases where unlawful pressure tactics were used to induce various ends even though the business of the object of the coercion was destroyed. Original Ballet Russe, Lt. v. Ballet Theatre, Inc., 2 Cir., 1943, 133 F.2d 187; Opera on Tour, Inc. v. Weber, 285 N.Y. 348, 34 N.E.2d 349, 136 A.L.R. 267; American Guild of Musical Artists v. Petrillo, 286 N.Y. 226, 36 N.E.2d 123.

In the Original Ballet Russe case, supra, Judge Swan stated, 133 F.2d at page 189:

"We do not doubt that the law of New York also recognizes the tort of wrongful interference with one's business:" (citing cases)

In Al Raschid v. News Syndicate Co., Inc., 265 N.Y. 1, 191 N.E. 713, which was an action based upon defendant's furnishing allegedly false information to immigration officials resulting in plaintiff's deportation, the Court of Appeals, speaking through Chief Judge Crane, said:

"So much for the appellant's insistence that this is an action for malicious prosecutions. Whatever we may call it an action does lie, however, if the complaint states any facts showing a wrong which the law recognizes and will redress. One may not be liable for malicious prosecutions and yet be legally responsible for maliciously circulating or giving false information resulting in intentional injury to another. Even a lawful act done solely out of malice and ill will to injure another may be actionable." [265 N.Y. at page 3, 191 N.E. at page 713]

The Court there cited and quoted from the Minnesota case of Tuttle v. Buck, 107 Minn. 145, 119 N.W. 946, 22 L.R.A.,N.S., 599, 131 Am.St.Rep. 446, 16 Ann.Cas. 807, where a wealthy wrongdoer set up a barber shop in competition with another for the sole purpose of diverting customers from the latter and destroying his business.

The Restatement of the Law of Torts seemingly contemplates a situation of this kind. Section 871 speaks of liability where "a person who by a tortious act intentionally causes harm to or deprives another of a thing which the other has, and is entitled to, possession or title or other legally protected interest, or who by the improper exercise of a legal power, intentionally creates liability against the other * * *."

The Comment on the section states that its purpose is to state a generalization within which are included matters not specifically dealt with in earlier sections but which are within the general principles of tort liability.

Plaintiff maintains that this section outlines its theory of action in broad terms, and it is not clear that this is not true, although none of the section illustrations even closely approaches the present situation. See also 15 C.J.S., Conspiracy, § 10, page 1006, and annotations, which deal with circumstances similar to the instant one.

I have not been informed of any authority, nor have I found any in New York, Maryland, District of Columbia, or Connecticut which is of any more assistance than the examples already given. However, I have found no authority which would bar this cause of action in these jurisdictions.

With these thoughts in mind, I think that the first claim for relief should be sustained because it is not patently clear that the plaintiff may not recover under any set of facts which this first claim in the complaint might conceivably embrace. Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774; Publicity Building Realty Corporation v. Hannegan, 8 Cir., 1943, 139 F.2d 583.

The pleading is replete with allegations suggesting fraud, slander of title and duress, and possibly some point might be made of them.

However, if this count of the complaint is nothing more than a glorified cause of action for malicious prosecution, I could not sustain it, but I think it goes farther. In fact, if plaintiff is to succeed here, plaintiff must proceed upon an entirely different theory, as I have indicated above.

The second and third claims for relief cannot be sustained.

Section 580, subdivision 3 of the New York Penal Law provides that:

"If two or more persons conspire:

    *      *      *      *      *      *

"3. Falsely to institute or maintain an action or special proceeding;

    *      *      *      *      *      *

"Each of them is guilty of a misdemeanor."

The plaintiff asserts that a violation of this section gives rise to a civil action in addition to a criminal proceeding.

It is true that a few cases in construction of Section 580, notably Kellogg v. Sowerby, 1907, 190 N.Y. 370, 83 N.E. 47, have indicated that a civil action is maintainable for a violation of the section, but those cases largely concern subdivisions other than the one involved here. As I

read the cases relied upon by plaintiff to sustain this cause of action, I note that they have to do with conspiracies based upon acts which were illegal in themselves in the light of the common law and public policy of the State. I find no case expressly authorizing a civil suit under this statute for falsely instituting an action. Nor can I impute to the Legislature an intent to change well-established rules of law in the absence of a clear manifestation of such intention. Seligman v. Friedlander, 199 N.Y. 373, 92 N.E. 1047; Jones v. City of Albany, 151 N.Y. 223, 45 N.E. 557; People v. Phyfe, 136 N.Y. 554, 32 N.E. 978, 19 L.R.A. 141.

To do so would in effect sanction a cause of action under this section in addition to every suit for malicious prosecution that is brought, and in many instances, such as here, it would permit suits for conduct in the nature of malicious prosecution, yet lacking the essential requisites for basing such an action, and thus would approve the bringing and maintaining of an action for malicious prosecution based on facts which under the settled policy of the State could not otherwise be instituted and maintained.

Finally, the third claim for relief is one for malicious prosecution.

Assuming, as alleged in the complaint, that the actions were maliciously brought, without probable cause and terminated favorably for plaintiff, this pleading is still insufficient under the law of Maryland and the District of Columbia, where the suits were instituted, as well as under the law of New York.

■■ Although there seems to be some division of authority upon the point, nevertheless the law of Maryland and the District of Columbia is settled to the effect that an action for malicious prosecution will not lie for the institution or prosecution of a civil action where the person or property of the defendant has not been interfered with by arrest, attachment, replevin, injunction, receivership or other provisional remedy. McNamee v. Minke, 49 Md. 122; Supreme Lodge Protective League v. Unverzagt, 76 Md. 104, 24 A. 323; Owens v. Graetzel, 149 Md. 689, 132 A. 265; Peck-

ham v. Union Finance Co., 60 App.D.C. 104, 48 F.2d 1016. The same rule applies in the State of New York. Willard v. Holmes, 142 N.Y. 492, 37 N.E. 480; Paul v. Fargo, 84 App.Div. 9, 82 N.Y.S. 369; Black v. Judelsohn, 251 App.Div. 559, 296 N.Y.S. 860; Sachs v. Weinstein, 208 App. Div. 360, 203 N.Y.S. 449; Sunkist Drinks, Inc. v. California Fruit Growers' Exchange, D.C., 25 F.Supp. 400; Schulman v. Modern Industrial Bank, 178 Misc. 847, 36 N.Y.S.2d 591, affirmed 266 App.Div. 833, 43 N.Y.S.2d 509; Weber-Pleuthert Co. v. Leventhal et al., 103 Misc. 80, 169 N.Y.S. 248, affirmed 184 App.Div. 962, 170 N.Y.S. 1118. Further, it appears that such provisional remedy must in fact be granted and not merely requested in order to satisfy the rule, so that the applications for receiverships in Maryland and the District of Columbia would not be the special injury required.

■ The plaintiff asserts that special injury is found in the fact that the defendants brought successive suits for the same cause of action. Section 679 of the Restatement of the Law of Torts makes mention of this point, but it must be noted that the second Maryland suit and the District of Columbia suit, even though concerned with the same subject matter, had different parties defendant, and it appears that the latter action was begun in order to obtain jurisdiction over the Kings. See King v. Wall & Beaver Street Corporation, 79 U.S. App.D.C. 234, 145 F.2d 377, and Wall & Beaver Street Corporation v. Munson Line, D. C., 58 F.Supp. 101.

I have come to the conclusion that the second and third claims in the complaint fail to state claims upon which relief can be granted.

Defendants' motion as to the first claim in the complaint is denied. It is granted as to the second and third claims.

Plaintiff has made application for leave to take depositions of the defendants pursuant to Rule 26, F.R.C.P. The defendants have not yet answered.

■ In general, a plaintiff may not be permitted to take depositions under this rule before answer is served unless some fact requires that the testimony be perpetu-

ated because of illness, or a defendant's imminent departure from the jurisdiction of the court, or other good reason. Sund v. Club Beachcomber, Inc., D. C., 2 F.R.D. 246; Hillside Amusement Co. v. Warner Bros. Pictures, Inc., D. C., 2 F.R.D. 98; International Tag & Salesbook Co. v. American Salesbook Co., Inc., 6 F.R.D. 45; Moore's Federal Practice, page 2463.

Plaintiff's application is designed to gain advantage over the defendants by proceeding first in taking depositions because it anticipates that defendants will serve such notice with the filing of their answer; and it states that such a move on the part of defendants would be solely dilatory for the reason that defendants are already aware of all the problems in the action as a result of extensive examinations in, and trials of, the other suits. It asks that the Court at least direct that its examination proceed first so that the trial will not be delayed.

These reasons do not seem to be sufficient under the authorities, and it is not apparent that it would unduly delay the trial if defendants were to proceed first.

Plaintiff's motion is accordingly denied.

Settle order in accordance with all of the foregoing.