Abraham N. Geller, J.
Motion for a temporary injunction to the extent of restraining defendant union, its officers and representatives from directing or inducing a work stoppage or the continuance of a work stoppage with respect to plaintiff’s business and directing said defendants to revoke the prior notices, directives or orders given to effectuate a work stoppage, is granted.
The parties entered into a collective bargaining agreement consisting of a preliminary two-page agreement which incorporated an attached 25-page 1963-1966 AFTRA National Code of Fair Practice. In the agreement they agreed to submit to arbitration any controversy or dispute with respect to this code or the interpretation or breach thereof and “ that there will be no stoppage of work pending arbitration and award, and the parties agree that all awards rendered will be binding upon them. ’ ’ The code contains numerous detailed provisions, including a step-by-step arbitration procedure, which states in most explicit language that 1 ‘ all disputes and controversies of every kind and nature whatsoever * * * arising out of or in connection with this Code * * * as to the existence, validity, construction, meaning, interpretation, performance, non-performance, enforcement, operation, breach, continuance or termination of this Code * * * shall be submitted to arbitration in accordance with the following procedure.”
A dispute arose with regard to the union’s claim that plaintiff had failed to pay artists the proper amount of fees as provided in various sections of the code. The matter not having been adjusted after several conferences, the union voted to declare plaintiff unfair because of the alleged improper payments and sent a notice to its members directing them not to accept employment from plaintiff and advising that violation of such directive might subject the member to disciplinary proceedings. Such notice of work stoppage was publicized in trade papers.
The union contends that the arbitration procedure is not the exclusive remedy for disputes under the code, because it provides, in other sections, that artists may be instructed not to work for any employer who breaches any terms or conditions of the code and that the no-strike clause applies only “ so long as the producer performs this Code.” It also maintains. that there has been no stoppage of work because, notwithstanding *775 the processing of past claims, each artist is entitled to refuse to accept future employment by a producer who does not perform his obligations.
The basic policy, of course, is to promote the arbitral process as a substitute for economic warfare (Steelworkers v. Warrior & Gulf Co., 363 U. S. 574). There can be no doubt that arbitration is the exclusive and mandatory requirement under this agreement for settlement of disputes relating to any provision thereunder. To permit unilateral prejudgment of such a dispute would nullify entirely the effectiveness of the arbitration so meticulously provided both in the code proper and in the preliminary portion of the agreement signed by the parties. The immediately following and express provision that there was to be no stoppage of work pending arbitration would be completely without meaning if such action as was here taken by the union were not deemed a violation of the collective bargaining agreement.
The code provisions regarding the right to instruct artists not to work for an unfair producer and the right to strike if the producer does not perform the code, can only be deemed operative after a determination by the arbitrator of the dispute and a failure to comply by the producer.
Such breach of the agreement may be properly enjoined, the controversy not being within the exclusive jurisdiction of the National Labor Relations Board or of the Federal courts, nor involving a labor dispute within the meaning of section 807 of the Labor Law, formerly section 876-a of the Civil Practice Act (Anchor Motor Frgt. N. Y. Corp. v. Local No. 445, 12 Misc 2d 757, affd. 5 A D 2d 869).
The injunction granted is solely directed to the union and its officers and representatives. The individual members may at any time refuse to work (cf. Opera on Tour v. Weber, 285 N. Y. 348, 353). What is enjoined is action on the part of the union itself directing, inducing or threatening members to refrain from working for plaintiff until arbitration of the dispute. This, clearly, is what the agreement provided.
Pending arbitration, the union is directed to revoke all the notices, directives or orders issued concerning the work stoppage, employing the same media and methods previously used for distribution. It may, of course, include a statement regarding its claims as against plaintiff and that same have been submitted for arbitration, if such be the ease at the time,