ANDERSON *v.* SHIPOWNERS ASSOCIATION OF THE PACIFIC COAST ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 306.   Argued October 28, 29, 1926.—Decided November 22, 1926.

1. A suit by an individual, claiming injury, on behalf of himself and all others in like case, to enjoin the maintenance of a combination in restraint of commerce violating § 1 of the Anti-Trust Act, is authorized by §§ 4 and 16 of the Clayton Act. P. 360.

2. Ships and those who operate them are instrumentalities of commerce and within the Commerce Clause, no less than cargoes. P. 363.

3. A combination whereby the owners and operators of ships engaged in interstate and foreign commerce surrender completely their freedom of action in respect of the employment of seamen, to associations formed to regulate and control the subject, violates the Anti-Trust Act. P. 362.

4. Where the bill alleged such a combination, the direct and necessary consequence of which was to restrain interstate and foreign commerce, it was unnecessary to add an allegation that such was the specific intent of those in the combination. P. 363.

5. Therefore it is unimportant in this case to inquire whether the object of the combination was merely to regulate the employment of men and not to restrain commerce. P. 363.

10 F. (2d) 96, reversed.

CERTIORARI (271 U. S. 652), to a decree of the Circuit Court of Appeals which affirmed a decree of the District Court dismissing a bill to restrain an unlawful combination, and for damages.

*Mr. H. W. Hutton* for the petitioner.

*Mr. Chauncey F. Eldridge,* with whom *Messrs. Frederick C. Peterson* and *George O. Bahrs* were on the briefs, for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit to enjoin the respondents from maintaining a combination in restraint of interstate and foreign commerce in violation of § 1 of the Anti-Trust Act, c. 647, 26 Stat. 209, and to recover damages. Such a suit is authorized by §§ 4 and 16 of the Clayton Act, c. 323, 38 Stat. 730, 731, 737. *Duplex Co.* v. *Deering,* 254 U. S. 443, 464–465. Upon respondents' motion, the district court dismissed the bill of complaint, apparently upon the merits, and the circuit court of appeals affirmed the decree. 10 F. (2d) 96. The only question necessary to be considered here is whether the bill states a case within the Anti-Trust Act.

The bill is not concisely drawn and the application of its allegations is to some degree obscured by references to acts of Congress regulating commerce, other than the Anti-Trust Act. For present purposes the pertinent allegations, shortly stated, are as follows: Petitioner is a

seaman and has followed that calling for more than twenty years on ships engaged in the carrying trade among the states on the Pacific Coast and with foreign countries. He is a member of the Seaman's Union of America, having a membership of about 10,000 seamen engaged in various forms of maritime service in the same field; and he sues on their behalf as well as his own. The members of the respondent associations own, operate or control substantially all the merchant vessels of American registry engaged in interstate and foreign commerce among the ports of the Pacific Coast and with foreign countries. These associations and their members have entered into a combination to control the employment, upon such vessels, of all seamen upon the Pacific Coast, and to that end the associations have established and maintain offices in San Francisco and San Pedro, California, where seamen are engaged and supplied to the operators of the vessels. Among other requirements, every seaman seeking employment is compelled to register, receive a number and await his turn according to the number, before he can obtain employment, the result of which is that seamen, well cualified and well known, are frequently prevented from obtaining employment at once, when, but for these conditions, they would be able to do so. A certificate is issued to each seaman which he is obliged to carry and present in order to obtain employment. The certificate, in part, recites that no person will be employed unless registered; that the certificate must be delivered to the master of the vessel upon articles being signed; that the certificate is the personal record of the seaman and the basis of his future employment. At the same time, two cards are issued,—one to the seaman, assigning him to a specified employment, and another to the ship, reciting the capacity in which the seaman is to be employed, with the statement that " he must not be employed on your ship in any capacity unless he presents

an assignment card, grey in color, issued by us and addressed to your vessel designating the position to which we have assigned him." The associations fix the wages which shall be paid the seamen. Under the regulations, when a seaman's turn comes, he must take the employment then offered or none, whether it is suited to his qualifications or whether he wishes to engage on the particular vessel or for the particular voyage; and the officers of the vessels are deprived of the right to select their own men or those deemed most suitable. Without a compliance with the foregoing requirements, no seaman can be employed on any of the vessels owned or operated by members of the associations.

It is further alleged that the petitioner sought employment through the San Francisco office of the associations and was refused registration because he failed to produce a discharge book. At a later time, he was employed by the mate of a vessel engaged in coastwise interstate traffic, but was required by the mate to apply at the office of the associations for assignment as a sailor; that upon application being thus made such assignment was refused; that, nevertheless, he was directed by the mate to report on board for duty; that he did report, but was informed by the mate that he had been ordered to take no seamen except through the office of the associations, and in consequence petitioner lost the employment to his damage in a sum stated.

From these averments, the conclusion results that each of the shipowners and operators, by entering into this combination, has, in respect of the employment of seamen, surrendered himself completely to the control of the associations. If the restraint thus imposed had related to the carriage of goods in interstate and foreign commerce— that is to say, if each shipowner had precluded himself from making any contract of transportation directly with the shipper and had put himself under an obligation to

refuse to carry for any person without the previous approval of the associations—the unlawful restraint would be clear. But ships and those who operate them are instrumentalities of commerce and within the Commerce Clause no less than cargoes. *Second Employers' Liability Cases,* 223 U. S. 1, 47–49. And, as was said by this Court in *United States* v. *Colgate & Co.,* 250 U. S. 300, 307, " The purpose of the Sherman Act is to prohibit monopolies, contracts and combinations which probably would unduly interfere with the free exercise of their rights by those engaged, or who wish to engage, in trade and commerce—in a word to preserve the right of freedom to trade." That the effect of the combination now under consideration, both as to the seamen and the owners, is precisely what this language condemns, is made plain by the allegations of the bill which we have just summarized. The absence of an allegation that such was the specific intent is not important, since that is the necessary and direct consequence of the combination and the acts of the associations under it, and they cannot be heard to say the contrary. *United States* v. *Patten,* 226 U. S. 525, 543. It is not important, therefore, to inquire whether, as contended by respondents, the object of the combination was merely to regulate the employment of men and not to restrain commerce. A restraint of interstate commerce cannot be justified by the fact that the object of the participants in the combination was to benefit themselves in a way which might have been unobjectionable in the absence of such restraint. *Duplex Co.* v. *Deering, supra,* p. 468; *Ellis* v. *Inman, Poulsen & Co.,* 131 Fed. 182, 186.

Respondents rely on *Industrial Association* v. *United States,* 268 U. S. 64; *United Leather Workers* v. *Herkert,* 265 U. S. 457, and *United Mine Workers* v. *Coronado Co.,* 259 U. S. 344; but these cases are not in point. The conspiracies or combinations in all three related to local

matters—the first, to building in San Francisco, the second, to manufacturing, and the third, to mining operations—and the effect upon interstate commerce was held to be purely indirect and secondary. Neither the making of goods nor the mining of coal is commerce; and the fact that the things produced are afterwards shipped or used in interstate commerce does not make their production a part of it. Nor is building commerce; and the fact that the materials to be used are shipped in from other states does not make building a part of such interstate commerce. In the *Industrial Association* case, after a reference to the two earlier decisions, pp. 80–82, it was said (p. 82): "The alleged conspiracy and the acts here complained of, spent their intended and direct force upon a local situation,—for building is as essentially local as mining, manufacturing or growing crops,—and if, by a resulting diminution of the commercial demand, interstate trade was curtailed either generally or in specific instances, that was a fortuitous consequence so remote and indirect as plainly to cause it to fall outside the reach of the Sherman Act." Here, however, the combination and the acts complained of did not spend their intended and direct force upon a local situation. On the contrary, they related to the employment of seamen for service on ships, both of them instrumentalities of, and intended to be used in, interstate and foreign commerce; and the immediate force of the combination, both in purpose and execution, was directed toward affecting such commerce. The interference with commerce, therefore, was direct and primary, and not, as in the cases cited, incidental, indirect and secondary.

Taking the allegations of the bill at their face value, as we must do in the absence of countervailing facts or explanations, it appears that each shipowner and operator in this widespread combination has surrendered his freedom of action in the matter of employing seamen and

agreed to abide by the will of the associations. Such is the fair interpretation of the combination and of the various requirements under it, and this is borne out by the actual experience of the petitioner in his efforts to secure employment. These shipowners and operators having thus put themselves into a situation of restraint upon their freedom to carry on interstate and foreign commerce according to their own choice and discretion, it follows, as the case now stands, that the combination is in violation of the Anti-Trust Act.

> *Decree reversed and cause remanded to the district court for further proceedings in conformity with this opinion.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.