## ANDERSON v. SHIPOWNERS' ASS'N OF THE PACIFIC COAST et al.

District Court, N. D. California, S. D. June 21, 1928.

No. 1486.

Monopolies ⊙⟹24(2)—Evidence held not to establish combination in restraint of trade between shipowners' associations by maintenance of bureau for employment of seamen.

Evidence *held* not to establish combination in restraint of trade between associations owning, operating, or controlling vessels in interstate and foreign commerce on the Pacific Coast, by maintenance of employment bureau for employment of all seamen on the Pacific Coast; it not having been proven that associations and their members have bound themselves to employ seamen exclusively through such employment bureau.

In Equity. Suit by Cornelius Anderson, on behalf of himself and all other seamen employed in interstate and foreign commerce by sea on vessels flying the flag of and engaged in the merchant service of the United States, and sailing to and from ports on the Pacific Coast of the United States, against the Shipowners' Association of the Pacific Coast and others. Judgment for defendants

H. W. Hutton, of San Francisco, Cal., for plaintiff.

Herman Phleger, Maurice E. Harrison, and George O. Bahrs, all of San Francisco, Cal., for defendants.

KERRIGAN, District Judge. This is a suit to enjoin the Shipowners' Association of the Pacific Coast, the Pacific American Steamship Association, and their members and agents from maintaining a combination in restraint of interstate and foreign commerce, and to recover damages. Plaintiff is a seaman, and sues on his own behalf and on behalf of other seamen. The defendant Shipowners' Association is composed principally of shipowners operating in the coastwise trade. The defendant Pacific American Association is composed very largely of shipowners engaged in intercoastal and foreign trade. In 1921 the Shipowners' Association, joined shortly after by the Pacific American Association, opened an employment bureau, now called the Marine Service Bureau, through which seamen might be hired. The operation of this bureau gave rise to this litigation.

The complaint herein was sustained as stating a cause of action by the Supreme Court of the United States. Anderson v. Shipowners' Association, 272 U. S. 359, 47 S. Ct. 125, 71 L. Ed. 298. That court summarized its conclusions as follows (page 364 [47 S. Ct. 127]):

"Taking the allegations of the bill at their face value, as we must do, in the absence of countervailing facts or explanations, it appears that each shipowner and operator in this widespread combination has surrendered his freedom of action in the matter of employing seamen and agreed to abide by the will of the associations. Such is the fair interpretation of the combination and of the various requirements under it, and this is borne out by the actual experience of the petitioner in his efforts to secure employment. These shipowners and operators having thus put themselves into a situation of restraint upon their freedom to carry on interstate and foreign commerce according to their own choice and discretion, it follows, as the case now stands, that the combination is in violation of the Anti-Trust Act [15 USCA §§ 1–7, 15]."

After the coming down of the mandate, defendants filed their answer, denying all of the material allegations of the complaint, and the case has now been fully and carefully tried. Consideration of the evidence brings me to the conclusion that plaintiff has not sustained his burden of proof as to the allegations of his complaint, and that judgment must be entered for defendants.

The material allegations of the complaint are as follows:

(1) That the members of the defendant associations own, operate, or control substantially all the merchant vessels of American registry engaged in interstate and foreign commerce on the Pacific Coast.

(2) That defendants have entered into a combination to control the employment of all seamen upon the Pacific Coast, through the operation of employment offices maintained at San Francisco and San Pedro, Cal.

(3) That every seaman is (a) compelled to register and await his turn before he can obtain employment; (b) obliged to carry a certificate issued to him on registration, which recites that no person will be employed unless registered, which must be delivered to the master of the vessel upon his employment, and which becomes the record upon which future employment is based; (c) given two cards, one assigning him to a specified employment, the other to the ship, the latter reciting that he shall not be employed in any capacity unless he presents his assignment card; (d) compelled to accept the employment offered when his turn comes, irrespective of his own preferences or special qualifications.

(4) That the associations fix the wages paid to seamen.

(5) That the officers of the vessels are deprived of their right to select their own men.

(6) That no seaman who has not complied with the requirements of registration, etc., can be employed on any vessels owned or operated by the members of defendants.

With reference to his own case, Anderson alleges that he attempted to register at the San Francisco employment office maintained by defendants, and was refused registration because he could not produce his service record, or discharge book. He alleges that he was then employed by the mate of a vessel owned by a member of one of defendants, and instructed to obtain an assignment card from the employment bureau. This card was refused. He nevertheless reported to the vessel under orders from the mate, only to be finally rejected because the mate had been ordered to take no seamen, except through the employment office of the associations. He alleges damages on this account.

Since the complaint was filed and prior to the trial defendants have made two chang-

es in the form of the documents used by them. One consists in the elimination from the "certificate" or service record book of any statement that seamen would be employed only through the Marine Service Bureau, and must be registered there, and any statement that such service record or discharge book must be presented in order to obtain employment. The ship assignment cards no longer contain the requirement that the bureau's assignment card be also presented. The documents now in use by the Marine Service Bureau are in evidence. They contain no statements indicating that they are required to be presented in order to secure employment, and that employment will be denied unless they are presented.

Since the facts at the time of trial are the controlling facts in an action of this type, I cannot and shall not consider the possible effect on this case of the documents formerly used. Although it is not material to the decision of this case, it may be noted that the membership of defendants does not, as alleged, embrace the owners or operators of substantially all the merchant vessels of American registry engaged in interstate and foreign commerce on this coast, but approximately 50 per cent. thereof.

Before turning to a discussion of the evidence, it should be noted, also, that the opinion of the Supreme Court is limited to a ruling that, if defendants and their members had in fact bound themselves to employ seamen only through the Marine Service Bureau in the manner alleged in the complaint, they would then have restrained their freedom in the conduct of interstate and foreign commerce. The Supreme Court does not say that they may not maintain an employment bureau, merely that they may not agree to restrict their selection of seamen to such bureau alone.

The chief question, therefore, is as to whether the evidence shows that defendants and their members have in fact bound themselves by agreement, tacit or express, to employ seamen through the Marine Service Bureau exclusively. On this issue the evidence shows an entire absence of express agreement. Further, the evidence fails to show any tacit understanding, binding upon the members of defendants, requiring them to employ through the Marine Service Bureau alone, and to hire no seamen not registered there.

Officers of steamship companies, members of defendants, and the managers of the Marine Service Bureau offices at San Francisco and San Pedro testify that, while most of the members of the two defendant associations secure a large proportion of their seamen through the Marine Service Bureau, all of the members hire some seamen from other sources, who never register at the bureau. The proportion of men hired outside the bureau varies widely. In some instances it is a small percentage, but certain companies use the bureau only for 50 per cent. or less of their requirements. Two member companies do not use the bureau at all.

The testimony is that, if the port captain, master, or mate, or other authorized person, desires a particular man who has registered at the bureau, that man will be hired, irrespective of his number or position on the list at the bureau. Men may be hired out of turn, as the result of interviews by ship's officers or company agents at the bureau, or as the result of a request for men of particular experience or of a certain nationality.

It is further testified that the master or mate of a vessel may, and frequently does, reject a man sent from the bureau, and that that man returns to the bureau for employment without loss of the priority due his registration number. The seaman also is free to refuse the employment, if not satisfied with the ship or the wages offered.

The bureau has nothing to do with wages. Each member of defendants pays such wages as are necessary in the current economic situation. Similarity of wage scales is due to similarity of condition, rather than to any agreement among defendants or their members. No penalty is or has ever been imposed upon any member of defendant associations for the independent selection of seamen above mentioned. This evidence is uncontradicted.

It is true that the members of defendant associations support the Marine Service Bureau by dues in the case of the Shipowners' Association, and by special assessment in the case of the Pacific American Association. But mere payment of such dues does not show an agreement to use the Marine Service Bureau exclusively. The weight of the contrary evidence, showing that the members of defendants vary so widely in their use of the bureau, rebuts any presumption which might arise from the mere maintenance of the bureau. There is further evidence to the effect that the existence of the Marine Service Bureau has materially assisted in bringing shipmaster and seaman together, which is sufficient explanation, if any were needed, of the willingness of the members of defendants to support it.

A similar wide variation among members to that appearing in the proportion of seamen hired through the bureau is shown in their present practices with regard to the service record or discharge book used by the bureau. The bureau now issues such books only to those seamen requesting them, although urging and advising seamen to take them. Many companies do not require that seamen hired by them present such books, and do not even ask whether they possess them. Other companies prefer that the seamen on their vessels have such books as a check on their employment records, but do not reject a seaman who has no such service record book, who is otherwise desirable. One or two companies do require their seamen to have these books. Among the reasons given by these companies are that the books are a convenient form of identification, and are used as dock passes, etc., as well as aids in keeping employment records, and that they afford a means of computing any bonus to which the seaman may become entitled by reason of the length of his employment.

As before stated, the service record books no longer contain any intimation that no seaman will be employed who cannot produce such a book. The practice of the companies and of the Marine Service Bureau also shows that employment is not conditioned upon presenting such books. The mode of their use does not indicate any agreement by defendants or their members making possession of the service record books (indicating registry with the Marine Service Bureau) a prerequisite to hiring.

Plaintiff introduced evidence that certain of the companies whose officers testified that they frequently hired men from other sources than the Marine Service Bureau nevertheless had signs posted in conspicuous places in their docks and offices stating: "All Employees Hired Through Marine Service Bureau." There is evidence that such signs were considered necessary to relieve the congestion on the docks, due to the number of men seeking employment. However this may be, the evidence shows that such signs are not universally used by the members of defendants. The independent evidence also shows that these signs do not represent an inviolable rule of even the companies using them. In the light of the other evidence of the independent action of the members of defendants, the mere presence of such signs is not sufficient to establish an agreement to use the Marine Service Bureau exclusively. The most it can show is that certain employers may desire to use the Marine Service Bureau only, which, as I view the law of this case as declared by the Supreme Court, is not sufficient to establish a restraint of trade, where such employers have not bound themselves to so use the Marine Service Bureau.

The individual seamen, Anderson and others, who testified as to the operations of the Marine Service Bureau, in an attempt to prove that defendants had agreed to employ seamen through this agency only, and that the rules of the bureau were strictly and arbitrarily applied at the bureau and blindly followed by the members of defendants, may show that there are instances where infractions of their own rules by the agents of the bureau have worked injustice. Looking, however, to the volume of the business conducted by the bureau, and to the hardships necessarily attending upon the seasonal variations of the demand for and supply of seamen on the Pacific Coast, I cannot find that the evidence adduced goes further than the possibility of occasional injustice above mentioned. It does not establish the combination in restraint of trade alleged in the complaint. Some of the seamen complaining of failure for one reason or another to secure employment on account of the operation of the Marine Service Bureau have since received employment through that bureau. Others may have in fact been discharged or rejected for other reasons than failure to register, even though this were the reason given by the agents of the company involved.

To summarize: Plaintiff has failed to prove that defendants and their members have bound themselves to employ seamen exclusively through the Marine Service Bureau. The practices of defendants and the operators of the bureau do not evidence a combination in restraint of trade. The injunction prayed for will be denied.

Let judgment be entered for defendants.