## LOEW'S INCORPORATED v. BASSON et al.

District Court, S. D. New York.
July 23, 1942.

67

J. Robert Rubin, of New York City (Samuel D. Cohen, of New York City, of counsel), for plaintiff.

Barshay, Frankel & Rothstein, of New York City (Nathan Frankel and David Sloane, both of New York City, of counsel), for defendants.

GODDARD, District Judge.

Defendant Motion Picture Machine Operators' Union Local 306 moves for an order dismissing the complaint on the grounds that it fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), and that the court has no jurisdiction over the subject matter herein, pursuant to Rule 12(b) (1), and for judgment on the pleadings, pursuant to Rule 12(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The complaint alleges that plaintiff produces and manufactures motion pictures

in California and sends them, in interstate commerce, all over the United States to branch offices called "exchanges" where exhibitors see them and apply for licenses which become binding contracts, known as license agreements, upon acceptance thereof by plaintiff. At these exchanges, plaintiff maintains a staff of inspectors of film, repair men, and others who see to it that the positive prints of the films are sent to the various exhibitors, and who examine and repair the prints when they are returned by the exhibitors to the exchanges; in New York City, these employees and the men who deliver the films to the exhibitors are members of Local B 51 of the International Alliance of Theatrical Stage Employees and Moving Picture Operators of United States and Canada [hereinafter referred to as "IATSE"], with whom plaintiff had a contract for a term commencing December 1, 1939 and expiring November 30, 1941, said employees continuing to be employed under the terms and conditions of said contract; that plaintiff could not continue in its business of distributing motion pictures without those employees; plaintiff has a contract with defendant Local 306 of the "IATSE" for a term commencing September 1, 1935 and expiring August 31, 1945, with respect to the projection men employed in the sixty five theatres operated by plaintiff in the five boroughs of New York City; plaintiff also has a contract with defendant Local 306 with respect to the projection men employed at its home office and film exchange, the contract having expired on August 31, 1940; said employees have continued to be employed under its terms; in the event that plaintiff's sixty five theatres should be unable to obtain prints and exhibit motion pictures, plaintiff would lose approximately $400,000 per week; plaintiff and seven other motion picture distributors, Columbia Pictures Corporation, Paramount Pictures, Inc., R. K. O. Radio Pictures, Inc., Twentieth Century-Fox Film Corporation, United Artists Corporation, Universal Pictures Company, Inc., and Warner Bros. Pictures, Inc., collectively distribute a majority of the feature motion pictures of quality in the New York area. Each of these companies maintains an exchange in New York City for the distribution of motion pictures in the same manner as plaintiff does and all exhibitors operating motion picture theatres in the area serviced by the New York exchanges of the plaintiff and the other distributors are dependent upon a steady and constant supply of motion pictures to enable them to continue to operate their theatres; the projectionists employed by each of the other seven distributors in their exchanges and home offices, are also members of defendant Local 306, as are the projection men employed in the theatres operated by said distributors; plaintiff and each of the other seven distributors have entered into agreements with many of the independent exhibitors licensing the exhibition of motion pictures during 1941–42, each such license agreement calling for the delivery of prints from time to time, in accordance with the booking arrangements made between the exhibitors and the exchange, throughout the contract period, and many of these booking arrangements have some time to run; that it would be impossible for the independent exhibitors to remain in business unless plaintiff and the other distributors perform these agreements; plaintiff's revenue derived from the licensing agreements has amounted in the past to over $375,000 per year and if plaintiff were to be prevented from delivering the prints in accordance with its agreements for the 1941–42 season and from entering into new agreements, its loss would exceed $400,000.

The complaint also alleges that in July, 1938 the United States of America commenced a suit in equity against plaintiff and other distributors, alleging various violations of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1 and 2, which culminated in the entry of a consent decree against them on November 20, 1940, and which provided that the consenting defendants, including this plaintiff, were enjoined from doing certain prohibited acts; section VI of said consent decree provides that no distributor defendant [including plaintiff] shall refuse to license its pictures for exhibition in an exhibitor's theatre on some run upon terms and conditions fixed by the distributor which are not calculated to defeat the purpose of the section. The only conditions stated in Section VI aforesaid, with respect to the requirement that a distributor shall not so refuse to license its pictures, are that the exhibitor satisfy reasonable minimum standards of theatre operation, that the exhibitor be reputable and responsible, and that the granting of a run on any terms to such exhibitor will not have the effect of reducing the distributor's total film revenue in the competitive area in which such exhibitor's theatre

is located; that no other defense is available to a distributor defendant in an arbitration proceeding under the decree for a "some run" award in accordance with the provisions of said decree.

The complaint further alleges that on December 11, 1941, referring to a proposed new contract between plaintiff and Local 306 with respect to the projection men employed at plaintiff's New York exchange and home office, defendant Local 306, by its attorney, wrote plaintiff a letter which stated in part:

"* * * Local 306, is requesting that the collective agreement, to be executed between our respective clients, shall provide, among other satisfactory conditions of employment, such as wages, hours, working conditions, and term of contract, the following clauses in substance:

"I. Employer agrees to supply, rent, lease, sell, deliver, license, distribute or provide films in the City of Greater New York only to such exhibitors as employ and continue to employ solely members of Local 306 as projectionists, and the Employer agrees not to supply, rent, lease, sell, deliver, license, distribute or provide film to any exhibitor in the City of Greater New York not employing members of Local 306.

"2. Members of Local 306 shall not be required, directly or indirectly, to work with, handle or work upon film, which was not or is not to be handled, transported and projected in the City of Greater New York, solely by members of the International Alliance of Theaterical Stage Employes and Moving Picture Machine Operators of the United States and Canada, or its subsidiary locals, or the members of such union as is approved by the International Alliance, and which is recognized by one of the Central Organizations with which Local 306 is affiliated.

"3. * * * Employer further agrees that the agency which delivers the film shall not be re-required) to deliver and need not deliver film to any exhibitor within the City of Greater New York who does not employ and continue to employ as projectionists solely members of Local 306.

"4. Employer agrees that film bearing the label of the International Alliance will be supplied for exhibition in the City of Greater New York only to such exhibitors as employ and continue to employ as projectionists solely members of Local 306."

The complaint then alleges that at conferences between representatives of plaintiff and Local 306, plaintiff was told that it must immediately comply with the terms and conditions set forth in the letter of December 11, 1941 or else Local 306 would immediately call out on strike its members who are employed as projectionists in plaintiff's home office and New York film exchange, and upon the request of Local 306, to be made immediately, "IATSE" will call out on strike all the members of Local 306 who are employed as projectionists in plaintiff's sixty five theatres in Greater New York City, all members of Local B 51 employed in plaintiff's New York exchange and all members of any affiliated unions of "IATSE" who are employed in plaintiff's studio at Culver City, California.

Plaintiff alleges that if these threats are carried out, and strikes take place pursuant to such threats, the business of plaintiff in all its branches, i.e. production, distribution, and exhibition of motion pictures, will be seriously and irreparably damaged and injured and will come to a standstill resulting in a loss of many millions of dollars. It is also alleged that the defendant Local 306 and "IATSE" have advised plaintiff that similar demands will be made upon the other seven distributors and strikes will also be called against all of their operations in the event that they fail to comply.

Plaintiff alleges that it has no remedy or relief and will suffer irreparable injury, unless the relief sought herein is granted, and to comply with Local 306's demands would result in plaintiff's interference with the internal management of the business of the independent exhibitors and will require plaintiff to break and violate the license agreement, thereby subjecting it to claims and damage suits; that compliance with Local 306's demands will also result in a violation of the consent decree, referred to, and that every step and portion of plaintiff's business is in interstate commerce, including the licensing and distribution of motion pictures.

The complaint seeks a declaratory judgment pursuant to Section 274d of the Judicial Code, 28 U.S.C.A. § 400; (a) that the demands of the defendant are illegal and contrary to law and compliance there-

with by plaintiff is prohibited by law; (b) that in making these demands, defendant is not, and in enforcing said demands by strikes or other means of economic compulsion, defendant would not be a person participating in a labor dispute within the meaning of the Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C.A. §§ 101–115; (c) that a contract between plaintiff and defendant which would include the terms and conditions set forth in defendant's letter of December 11, 1941, would be a contract in restraint of trade in violation of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. § 1; (d) that compliance with defendant's demand would be a violation of the consent decree in United States v. Paramount Pictures Inc., and (e) that if all of the distributors would comply with defendant's demands, a conspiracy would result which would constitute a violation of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. § 1. The complaint also seeks a permanent injunction enjoining the defendant from taking any · steps to call strikes and inducing "IATSE" to call strikes.

Defendant makes eight objections to the validity of the complaint, which will be treated in the order in which they appear. Defendant contends—

1. That a declaratory judgment cannot be granted on a moot question, or for an advisory opinion, or where all the necessary parties are not before the court.

■ Defendant's contention is correct but inapplicable to the situation at bar. The question is not moot; there is no request for an advisory opinion and all the necessary parties are before the court. There appears to be a very real controversy, since plaintiff alleges that if it complies with defendant's demands, it will be violating the law and defendant contends that the coercive action it intends to take is entirely legal and proper. In addition, the complaint alleges that plaintiff's damage will be irreparable and no other way exists in which plaintiff can protect itself from the threats of defendant which appear to be imminent. See Section 274d (1) of the Judicial Code, 28 U.S.C.A. § 400(1). Excess Ins. Co. of America v. Brillhart, 10 Cir., 121 F.2d 776, 778.

2. That there are no allegations showing that interstate commerce would be affected by the acts of the defendant so as to invoke the Sherman Anti-Trust Act.

■ I am of the opinion that paragraphs 6, 7, and 33 of the complaint sufficiently allege the effect of defendant's acts upon interstate commerce. The business of plaintiff, a film distributor, is clearly interstate and the fact that the films stop at the exchanges prior to their shipment to the exhibitor does not deprive them of their interstate character. Binderup v. Pathé Exchange, 263 U.S. 291, 309, 44 S.Ct. 96, 68 L.Ed. 308.

3. That even if the requisite commerce were affected, no cause of action is stated under the Sherman Act, since plaintiff has not alleged that the threatened conduct of defendant will limit competition in the business of licensing and distributing motion picture films, or tends to restrict their production, raise their prices, or otherwise control the market to the detriment of purchasers of such films.

■ Paragraphs 6, 7, and 33 of the complaint, when read together, sufficiently allege facts to show a violation of the Sherman Act. The complaint plainly alleges that if plaintiff complies with defendant's demands, the exhibitors will be put out of business and if it fails to comply, the defendant's threatened action will stop all production, distribution and exhibition of motion pictures in the United States by plaintiff. See Anderson v. Shipowners' Ass'n of Pacific Coast, 272 U.S. 359, 363, 47 S.Ct. 125, 71 L.Ed. 298, where it was held that failure to allege that a combination was formed for the purposes of defeating the right of freedom to trade was immaterial, where such was the direct and necessary consequence of the combination and the acts done thereunder.

4 and 6 will be treated together. These objections are, that assuming the requisite restraint on commerce has been alleged, labor unions engaged in furthering trade union objectives are without the scope of the Sherman Anti-Trust Act; and that the complaint does not comply with the Norris-LaGuardia Act to confer jurisdiction on this court.

■ These objections constitute the essence of the controversy, since if a labor dispute exists between plaintiff and defendant, within the meaning of the Norris-LaGuardia Act, with respect to the matters here in dispute, the complaint must be dismissed as failing to comply with that statute, and because the Sherman Act is in-

applicable to labor where unions are engaged in furthering trade union activity in connection with a labor dispute. United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788. Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115.

A labor dispute "includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." Norris-LaGuardia Act, § 13(c), 29 U.S.C.A. § 113 (c). A person is "participating or interested in a labor dispute" if he "is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation." Norris-LaGuardia Act, § 13(b), 29 U.S.C.A. § 113(b). United States v. Hutcheson, 312 U.S. 219, 234, 61 S.Ct. 463, 85 L.Ed. 788.

Examining the situation in the case at bar, it appears from the complaint that the parties originally entered into negotiations for a new contract with respect to the projection men employed by plaintiff at its home office and its New York exchange. These men, who were members of defendant Local 306, had been employed under a contract which had expired on August 30, 1940 and they had continued in plaintiff's employ under the terms and conditions of said contract. Up to this point, there is clearly such a labor dispute as would necessitate the dismissal of this complaint.

However, the Union [Local 306] then saw fit to inject a demand in their proposed contract which had nothing whatever to do with the terms and conditions of employment of these men. They then made a new and further demand upon plaintiff that it must refuse to license any exhibitor who did not employ members of Local 306; that it must not send any prints to those exhibitors, and that it was not to expect any member of Local 306 to work on any prints which would subsequently be exhibited by an exhibitor who did not employ Local 306 projection men exclusively. This demand had nothing whatever to do with the wages, conditions, terms and other lawful objectives of labor which were then under discussion between plaintiff and defendant Local 306 with respect to the members of said Local who were employed by plaintiff at its home office and its New York exchange.

The Norris-LaGuardia Act was intended to protect the normal activities of labor in the formation of unions and in acting together to further their interests as members of a union, and from being regarded as constituting a conspiracy, even though their union activities might, to some extent, affect interstate commerce. Allen Bradley Co. v. Local Union No. 3 et al., D.C., 41 F.Supp. 727, 750. The statute, however broad, does not expand the application of the Act to include controversies upon which the employer-employee relationship has no bearing. Columbia River Packers Ass'n, Inc., v. Hinton, 315 U.S. 143, 146, 147, 62 S.Ct. 520, 86 L.Ed. ——.

In the case at bar, the employer-employee relationship has no bearing. Local 306 is attempting to compel plaintiff to force the independent exhibitors whom plaintiff licenses, to employ only members of Local 306 in its projection rooms. It is in the nature of a reverse secondary boycott, where the union, instead of attempting to coerce the retailer who carries non-union goods, here attempts to coerce the distributor of union goods to stop furnishing said materials to non-union customers. I do not believe that this is a labor dispute, nor do I believe that such action constitutes a lawful trade union objective. See Scavenger Service Corp. v. Courtney, 7 Cir., 85 F.2d 825, 833; American Guild of Musical Artists v. Petrillo, 286 N.Y. 226, 231, 36 N.E.2d 123; Opera On Tour v. Weber, 285 N.Y. 348, 355, 34 N.E.2d 349, 136 A.L.R. 267. The demands of the union, as alleged in the complaint, bear no reasonable relation to wages, hours, health, safety, working conditions, or the right of collective bargaining. Opera on Tour v. Weber, supra, 285 N.Y. at page 355, 34 N.E.2d 349, 136 A.L.R. 267.

The complaint alleges that Local 306 has threatened to request that "IATSE" call out every employee of the plaintiff, including members of all affiliated locals, and its own men as well, unless there is immediate compliance by plaintiff with the union's demands. Plaintiff has no control whatever over these independent exhibitors; nor has plaintiff any right to refuse to furnish them with films. On the contrary, such refusal and failure on the part of the plain-

tiff would result in damage suits being brought against it for breach of its licensing agreements and probable penalties by the United States of America for breach of the consent decree in United States v. Paramount Pictures, Inc., et al.

If defendant Local 306 desires to unionize the independent exhibitors, it is at liberty to do so, but the method here sought is not a proper one for the accomplishment of that purpose.

5. That the facts alleged do not constitute any boycott which might be prohibited by the Sherman Act.

The complaint alleges that if plaintiff complies with Local 306's demands, the three hundred independent exhibitors in Greater New York who do not employ members of Local 306 will be unable to obtain motion pictures; it also alleges that they are dependent upon a steady supply of these pictures in order to stay in business and operate. It further appears from the complaint that if plaintiff fails to comply with Local 306's demands, its entire business will be paralyzed and again the independent exhibitors will be unable to obtain pictures.

I believe that such a contract as is proposed by defendant would be subject to the condemnation of United States v. Brims, 272 U.S. 549, 47 S.Ct. 169, 71 L.Ed. 403, where it was held that a combination between a union and a non-labor group to eliminate the competition of non-union products constituted a violation of the Sherman Act. This situation was expressly excluded from the immunities granted to labor by the Norris-La Guardia Act in United States v. Hutcheson, supra, 312 U.S. at page 232, 61 S.Ct. 463, 85 L.Ed. 788. The effect of plaintiff's compliance with the demands of Local 306 would be to eliminate from the motion picture exhibition business all exhibitors who do not employ members of Local 306. The result would be that all competition, with respect to the exhibitors who did not employ members of Local 306, would be eliminated and no projectionist would be able to obtain a position, except those who are members of Local 306. The fact that plaintiff is being coerced by threat of financial ruin into such an agreement does not make it any the less an agreement between a labor and a non-labor group to eliminate the competition of theatres which were either not unionized or whose projectionists were not members of Local 306, within the condemnation of United States v. Brims, supra, and the explicit remarks of the court in United States v. Hutcheson, supra, where it was said (312 U.S. at page 232, 61 S.Ct. at page 466, 85 L.Ed. 788): "So long as a union acts in its self-interest and does not combine with non-labor groups * * *".

Furthermore, the effect of such action as the union threatens would be to cut off the entire supply of motion pictures all over the country in the event that plaintiff fails to comply.

Defendant finally contends that the consent decree entered against plaintiff and other distributors confers no additional rights on plaintiff than it would otherwise have under the law and the license agreements between plaintiff and independent exhibitors are no bar to the demands of defendant and enforcement thereof.

These contentions might have some validity if a labor dispute existed in the case at bar. But since it appears that a labor dispute is not involved, these two factors only tend to emphasize the alleged illegality of the demands of the defendant. If plaintiff complies with the demands of the union, it will not only violate the provisions of the consent decree in United States v. Paramount Pictures, Inc., but it will also breach its license agreements with the independent exhibitors. Both of these actions on the part of the plaintiff would be illegal and the action of the union in attempting to coerce plaintiff to engage in such actions are also illegal, since they will result in a violation of the Sherman Act and will cause an interference with established contract rights. In addition, the action of the union in calling a strike would constitute a breach of its contract with plaintiff with respect to the projection men employed in plaintiff's sixty five theatres in Greater New York City, which contract has three more years to run.

Accordingly, defendant's motion is denied in all respects, defendant to have twenty days to answer after entry of order herein. Settle order on notice.