Carroll G. Walter, J.
Plaintiff is a New York corporation engaged in the business of selling paints, hardware, plumbing supplies, and similar articles. Its employees, other than clerical workers, about 18 in number, are members of Local 1146 of Plumbing, Hardware, Paint, Electrical, Radio Supplies and Automobile Accessories and Allied Trades Employees’ Union, of which defendant is treasurer, and they have been out on strike since July 1, 1948; and plaintiff brings this action to enjoin the union from picketing its place of business, from molesting or interfering with its customers or persons desiring to do business with it, and from creating the impression that there is a labor dispute between plaintiff and its employees or that plaintiff is unfair to organized labor, and also to recover the damages it allegedly has sustained as a result of the allegedly illegal activities of the union.
Defendant claims that the action involves or grows out of a labor dispute and that plaintiff is not entitled to any relief because it has failed to comply with section 876-a of the Civil Practice Act.
Plaintiff asserts that no labor dispute is involved, that the strike was called and has been and is being continued and the picketing is being conducted solely as a means of coercing plaintiff into complying with an illegal demand made upon it by representatives of the union for the payment to them of $3,000.
The important underlying question thus is whether such illegal demand was made and whether it was the cause of the strike; and there is presented the sharply conflicting testimony which normally could be expected upon such an issue.
On June 24, 1946, plaintiff and said local entered into a collective bargaining agreement covering all plaintiff’s employees except clerical workers.
On June 25, 1947, upon the termination of that agreement, they entered into a like agreement which terminated on June 25, 1948.
Just before such expiration, that agreement was extended to June 30, 1948, and on that latter date representatives of both parties met for the purpose of negotiating a new agreement. Exactly what happened during that meeting and exactly how the meeting ended is the subject of considerable conflict in the testimony, but there is substantial unanimity in the view that *916 the representatives of the union demanded a wage increase of $5 per week for each employee, two additional paid holidays, and a minimum of $40 per week for three apprentice employees who were then receiving $30 per week, and that plaintiff eventually offered and the employees eventually agreed to accept a wage increase of $3 per week for each employee with two additional paid holidays.
If, at the end of the conference, there was any dispute at all, it was merely with respect to whether plaintiff would raise three apprentice employees from $33 to $40 per week; and defendant’s position simmers down to the contention that plaintiff deliberately invited a strike and has endured one for 15 months rather than yield on that small point.
Appraising the candor and accuracy of the numerous witnesses the best I can, and viewing the situation according to what I think are the greatest probabilities, I am persuaded that this strike and this picketing did not commence and have not been continued because of that difference; that responsible representatives of the union did in fact demand of plaintiff a payment to them of $3,000; that the strike was called and it and the picketing have been continued, not for the purpose of gaining any advantage for the employees, but solely for the purpose of attempting to coerce plaintiff into paying that $3,000; and that the strike and the picketing would have ended at any time plaintiff acceded to the oft repeated demand for that $3,000.
Precisely who was to get the $3,000 very naturally was not stated in words of exact precision, but even that is immaterial. The impression made upon plaintiff’s president as well as upon me is that the union officials and agents wanted the $3,000 for themselves and that the demand was in essence and effect an attempt to extort $3,000 from plaintiff as a condition of labor peace. But even if the demand were intended as a request for a contribution to the union’s treasury, and was not illegal in itself, which I do not believe, plaintiff’s refusal of the demand yet could not legally be made a reason for calling the strike of its employees and picketing its place of business.
The strike and the ensuing picketing thus were not for a lawful labor objective and the action does not grow out of or involve a labor dispute and section 876-a of the Civil Practice Act has no application. (Opera on Tour v. Weber, 285 N. Y. 348; American Guild of Musical Artists v. Petrillo, 286 N. Y. 226, 231; and see, also, Scavenger Serv. Corp. v. Courtney, 85 F. 2d 825 [C. C. A. 7th]; Loew’s, Inc., v. Basson, 46 F. Supp. 66, 71 [U. S. Dist. Ct., S. D. N. Y.]; Converse v. Highway Constr. Co. of Ohio, 107 F. 2d 127, 131 [C. C. A. 6th].)
*917 And the ensuing picketing has not been peaceful. Gross violence, such as certainly would provoke immediate police interference, generally, though not entirely, has been avoided. But of vulgar and profane name calling, insults, and intimidation there has been an abundance. Plaintiff’s president, his wife, who has helped out in the store during the strike, and customers and prospective customers repeatedly have been called vile and obscene names, made to listen to and witness lewd and obscene language and gestures, and in some instances threatened •with personal violence. Intimidating threats and suggestions also have been prevalent. Plaintiff’s trucks and valuable articles in its store have been damaged under circumstances which are inexplicable except upon the theory that it was done by union agents in pursuance of the illegal objective of the strike. Plaintiff’s president has been repeatedly followed by union agents as he went to and from his home and as he made deliveries of merchandise to customers. Customers have been urged not to accept merchandise purchased by them from plaintiff during the strike and the urgings have been accompanied by intimidating threats and suggestions as to what dire consequences would ensue to them if they patronized plaintiff. One union agent drew a knife upon plaintiff’s president and told him he would find his guts cut out some evening. A fire occurred in the home of plaintiff’s president shortly after a union agent had said to him that anything could happen during a strike and that he might even roast in his own home. During the strike an automobile accidentally ran into and injured plaintiff’s place of business, and workmen and contractors brought there to repair the damage were molested and intimidated by union agents and subjected to lewd and obscene remarks and gestures by such agents, with the result that plaintiff has been unable to get the damage repaired even after weeks of waiting and efforts.
Such picketing is neither peaceful nor lawful. Neither the right of free speech, nor the right to strike, nor the right to persuade and gain sympathizers with and converts to the cause of unionism, includes or gives the right to abuse or intimidate or insult employers, strikebreakers or customers, and such acts may and should be enjoined (Exchange Bakery & Restaurant, v. Rifkin, 245 N. Y. 260; Nann v. Raimist, 255 N. Y. 307; Steinkritz Amusement Corp. v. Kaplan, 257 N. Y. 294; Wise Shoe Co. v. Lowenthal, 266 N. Y. 264; Busch Jewelry Co. v. United Retail Employees’ Union, 281 N. Y. 150); and as the picketing is not for a lawful labor objective it is tortious and unlawful even if peaceful. Opera on Tour v. Weber (285 N. Y. 348, *918 supra) did not involve a strike or picketing, and it hence cannot be cited as a direct authority for enjoining peaceful picketing, but other acts which would have been lawful if being done to further a lawful labor objective were there enjoined for the reason that they were being done to accomplish what was held not to be a lawful labor objective; and I hence think that that case, at least in principle and in its logical implications, is authority for the proposition I have just stated, viz.: that even peaceful picketing which is not for a lawful labor objective is tortious and unlawful. Mayer Bros. Poultry Farms v. Meltzer (274 App. Div. 169), is, I think, further authority for that proposition. To the same effect are: Colonial Press v. Ellis (321 Mass. 495, 501); Saveall v. Demers (322 Mass. 70); Fashioncraft, Inc., v. Halpern (313 Mass. 385); Quinton’s Market v. Patterson (303 Mass. 315); White Co. v. Murphy (310 Mass. 510, 522) ; Simon v. Schwachman (301 Mass. 573). (See, also, Teller, Picketing and Free Speech, 56 Harv. L. Rev., 180-218; Dodd, Picketing and Free Speech: A Dissent, 56 Harv. L. Rev., 513-531.)
Furthermore, the long continued repetition of the illegal incidents of the picketing which I have mentioned, even after a Justice of this court, in a conference with counsel with respect to an adjournment of the trial over the Summer, had directed that there be no such incidents, justifies the inference that the picketing here cannot, or at any rate will not, be conducted in a lawful manner; and for that additional reason this is a case in which all picketing should be enjoined. (Steinkritz Amusement Corp. v. Kaplan, 257 N. Y. 294, supra; Wise Shoe Co. v. Lowenthal, 266 N. Y. 264, 268, supra; Busch Jewelry Co. v. United Retail Employees’ Union, 281 N. Y. 150, supra.)
Plaintiff’s employees cannot be enjoined from continuing to strike, but because the strike was not called and is not being continued for a lawful labor objective the union can and should be enjoined from directing, warning, advising, or counselling the employees to remain on strike, and from imposing, threatening to impose, or asserting that there will be imposed any discipline, punishment, penalty or detriment because of their returning to work, and from giving, promising or offering any reward for not so returning.
The employees and the union both may and should be enjoined from maintaining any picket line in front of or picketing plaintiff’s place of business and from molesting, intimidating or interfering with plaintiff’s employees or customers or prospective customers or other persons desiring to do business with *919 plaintiff, and from asserting that there is a labor dispute between plaintiff and its employees or that plaintiff is unfair to organized labor.
Plaintiff has asserted, as an additional ground for relief, that the calling of the strike was a violation and breach of paragraph 20 of the agreement of June 25, 1947, wherein it is provided that during the life of this agreement and any negotiation or arbitration of grievances or the rewriting or renegotiation of this agreement there shall be no walkouts, strikes, work stoppages or picketing. But in view of the conclusion I already have reached upon the basis of the other grounds for relief,'it is unnecessary for me to consider whether the calling of the strike was a breach of that provision, whether, if it were, an injunction against further breach should now issue, or whether if the right to relief were to rest upon that ground alone the case would be thereby turned into one involving or growing out of a labor dispute within the meaning of section 876-a of the Civil Practice Act.
Although I hold that section 876-a has no application to this case and compliance therewith is not necessary to entitle plaintiff to relief, it seems not inappropriate that I make the following specific findings [cf. Civ. Prac. Act, § 876-a, subd. 1, pars, (a), (b), (c), (d), (e)], which I think are fully sustained by the evidence:
(a) Unlawful acts have been threatened and committed and will be continued unless restrained.
(b) Substantial and irreparable injury to plaintiff’s property will follow unless the requested relief is granted.
(c) As to each item of relief granted, greater injury will be inflicted upon plaintiff by the denial thereof than will be inflicted upon defendant by the granting thereof.
(d) Plaintiff has no adequate remedy at law.
(e) The public officers charged with the duty to protect plaintiff’s property have failed or are unable to furnish adequate protection. I hasten to add, however, that in that finding there is no reflection upon the police of the City of New York. Its meaning is that the acts which create the need for protection are such that the restraint of a court of equity is more appropriate and effective than any number of arrests of individuals by policemen.
Plaintiff has requested an award of damages for such injuries as it has sustained as a result of the strike, but in my opinion the evidence adduced upon the trial is not sufficient to enable me to fix such damages with reasonable certainty or identify *920 with certainty just who are liable therefor, and that request is refused, without prejudice to an action at law for the recovery of such damages.
The foregoing constitutes the decision required by the Civil Practice Act, and judgment in accordance therewith is to be entered thereon. The injunction so ordered is permanent in the sense that it finally adjudicates this action, but it of course does not adjudicate any dispute which may hereafter arise and is not to be taken or construed as enjoining a strike or picketing by reason of any subsequent labor dispute if such a dispute should hereafter arise between the parties.
If counsel on both sides will read the authorities I have cited and then sit down together with them, I have no doubt they will be able to agree upon the formulation of a judgment which will accord with and embody and carry out this decision. If they fail to agree, counterproposed judgments may be submitted for settlement. Plaintiff is awarded taxable costs and disbursements and the judgment should provide therefor.