**BODDEN v. McCORMICK SHIPPING CORP. et al.**
**THE SANS PEUR.**
No. 13291.

United States Court of Appeals Fifth Circuit.
May 8, 1951.

774

Bertram R. Coleman, Miami, Fla., for appellant.

H. N. Boureau, Miami, Fla., for appellees.

William S. Tyson, Solicitor, Bessie Margolin, Asst. Solicitor, William A. Lowe and Joseph D. Mladinov, Attys., U. S. Department of Labor, all of Washington, D. C. (Beverley R. Worrell, Regional Atty., Birmingham, Ala., on the brief), for the Secretary of Labor as *amicus curiae*.

Before HOLMES, BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This is an appeal in admiralty from a decree dismissing a third amended libel which seeks to recover sums alleged to be due as overtime wages for labor performed by libellant upon the yacht "Sans Peur." The question is whether or not said labor is within the coverage of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., libellant having already been paid his straight time, or regular wages, but not time and a half for overtime as required by sec. 7(a) of the Act, 29 U.S.C.A. § 207(a).

The "Sans Peur" was originally built and used as a private yacht. During World War II she was taken over by the Canadian Government and used as a training ship for Navy personnel. Some of her interior fittings were removed to make her more suitable for a training ship, but her identity as a yacht was left undisturbed. Shortly after May 25, 1947, Frank Leslie Fraser, one of the individual respondents herein, purchased said yacht for the purpose of restoring her to her former condition and selling her at a profit, intending at the time to sell her to a prospective purchaser in the Dominican Republic. Fraser employed libellant to inspect the yacht prior to purchase, for which purpose libellant travelled from Miami, Florida to Halifax, Nova Scotia. After the purchase by Fraser, the yacht was moved under her own power from Halifax to Miami, libellant acting as chief engineer on the voyage. Upon arrival at Miami, libellant was further employed by Fraser to perform the necessary labor of restoration, consisting of re-installing fittings, repairing flooring, wall-paneling, electrical work, engine room repairs, and other labor necessary to make her more saleable as a yacht, all of which was done. This labor is the basis of libellant's claim. After she was restored, the vessel was sold to McCormick Shipping Corporation, and was moved under her own power to Panama, where she was registered as a Panamanian vessel. When the original libel was filed she had returned to Miami.

The trial court dismissed the libel, holding that transportation of the vessel from

Canada to Miami, and thence to Panama where she was sold, was not "commerce" as defined in 29 U.S.C.A. § 203(b), because such "transportation and sale would be mere incidents, but not the carrying on of a trade or business." From this the court concluded that in performing labor on the vessel, libellant was neither engaged in commerce, nor in the production of goods for commerce, within the meaning of the Act.

█ This test, however, was rejected by the Supreme Court in Powell v. United States Cartridge Company, 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017, decided after exceptions to the libel were sustained below. In effect, the Powell case holds that the coverage of the Act is not limited to employees engaged in producing goods solely for competitive markets, but extends also to the production of goods for interstate transportation or delivery even though such goods are transported for use or consumption by the owner and not for sale or exchange. Whether or not, therefore, the transportation of goods is "commerce" within the definition of the Act, does not depend upon whether such transportation is in connection with a trade or business.

█ Moreover, it is not the nature of the employer's business, but the character of the employee's work that determines the applicability of the Act. St. Johns River Shipbuilding Co. v. Adams, 5 Cir., 164 F.2d 1012; Overstreet v. North Shore Corp., 318 U.S. 125, 132, 63 S.Ct. 494, 87 L.Ed. 656, 663.

█ By sec. 3(i) of the Act, ships are expressly included in the definition of "goods." The repair of ships to be used as vehicles in interstate or foreign transportation, no less than their original con-

struction,[1] is the production of "goods for commerce" within the meaning of the Act.[2] Employees engaged in the performance of that work are engaged in an occupation necessary to the production of goods for commerce.[3] As such, they are entitled to the protection of the Act. Divins v. Hazeltine Electronics Corp., 2 Cir., 163 F.2d 100, 102; Slover v. Wathen, 4 Cir., 140 F.2d 258; Walling v. Keansburg Steamboat Co., 3 Cir., 162 F.2d 405, 408. Compare Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383.

█ The "Sans Peur" moved under her own power from Halifax to Miami and thence to Panama. In doing so she was clearly an instrumentality of commerce, and remained so during the period of libellant's work, even though such transportation was not in connection with a trade or business. Anderson v. Shipowners' Ass'n of Pacific Coast, 272 U.S. 359, 363, 47 S.Ct. 125, 71 L.Ed. 298; Slover v. Wathen, 4 Cir., 140 F.2d 258, 259.

█ The vessel lay in the port of Miami from August, 1947 to December, 1948, a period of about one year and four months, before she proceeded to Panama. Libellant's labor was performed between August 15, 1947 and August 31, 1948. During this period the vessel was still a navigable vessel, capable of being used as such. She was not an abandoned hulk, but a ship in every sense of the term. Libellant's labor was for the purpose of making her more saleable as a yacht. She was not withdrawn from commerce during that period, so as to render labor upon her beyond

1. St. Johns River Shipbuilding Co. v. Adams, 5 Cir., 164 F.2d 1012; Adams v. St. Johns River Shipbuilding Co., D.C., 69 F.Supp. 989; Biggs v. Joshua Hendy Corp., 9 Cir., 183 F.2d 515, 519.

2. Sec. 3(j) of the Act, 29 U.S.C.A. 203(j) defines "produced" as including "handled, or in any other manner worked on" goods for commerce. This has been interpreted by the Supreme Court to in-

clude all steps, whether of manufacture or not, which lead to readiness for putting the goods into the stream of commerce. Western Union Tel. Co. v. Lenroot, 323 U.S. 490, 503, 65 S.Ct. 335, 89 L.Ed. 414, 424.

3. Compare Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638.

the scope of the Act. A ship does not lose her status as an instrumentality of commerce though laid up for extended repairs, preparatory to further service in commerce. J. F. Fitzgerald Const. Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1318; Bennett v. V. P. Loftis Co., 4 Cir., 167 F. 2d 286; Walling v. Keansburg Steamboat Co., 3 Cir., 162 F.2d 405; Walling v. Mc-Crady Construction Co., 3 Cir., 156 F.2d 932. Compare Hillcone S. S. Co. v. Steffen, 9 Cir., 136 F.2d 965; Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, at pages 545–556, 57 S.Ct. 592, 81 L. Ed. 789, at page 804.

In performing the labor in question, libellant was engaged in the production of goods for commerce. He is entitled to the rates of pay prescribed by the Fair Labor Standards Act. The decree appealed from is therefore reversed, and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.